IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02022–WYD–KMT

WYATT T. HANDY JR.,

      Plaintiff,

v.

CHIEF DIGGINS,
MAJOR V. CONNORS, and
CHAPLAIN SCOTT,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      In this prisoner civil rights suit, Plaintiff alleges that Defendants, Chief Diggins, Major Connors and Chaplain Scott, violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First and Fourteenth Amendments by refusing to provide him with a kosher diet in accordance with his religious beliefs.  This case comes before the court on "Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (Doc. No. 23 [Mot. Dismiss]), "Plaintiff's Motion to Amend the Complaint" (Doc. No. 39) and "Plaintiff's Motion to Amend the Complaint" (Doc. No. 47).

## STATEMENT OF THE CASE

      The following facts are taken from Plaintiff's Prisoner Complaint (Doc. No. 3 [Compl.], filed August 23, 2010).  At the time of the events in question, Plaintiff was an inmate at the

Denver County Jail (DCJ).  He states that on February 17, 2010, when he was booked into the DCJ, he informed the processing officer that he was Muslim and required a kosher diet.  The processing officer documented Plaintiff's response and explained that, to receive a religious diet, Plaintiff must submit a request (a kite) to Chaplain Scott for authorization.

Plaintiff asserts that he promptly submitted several kites to Chaplain Scott but did not receive an immediate response.  Six days later, on February 23, 2010, Chaplain Scott interviewed Plaintiff at which time Plaintiff filled out the application and signed the contract for the kosher meal program.  Plaintiff states that, due to his incarceration, he did not have contact information for an imam or mosque for verification purposes, but listed the Colorado Department of Corrections, the Adams County Detention Facility and the Arapahoe County Detention Facility as contacts to verify his religious affiliation.  He also informed Chaplain Scott that he had attended service six weeks prior to his incarceration and had been a practicing Muslim since 1997.  Chaplain Scott indicated that he would have a response regarding kosher meals by March 1, 2010.

Plaintiff did not receive a response by March 1, 2010, and on March 4, 2010, he submitted a kite to Major Connors, "put[ting] the Major on notice, of the situation regarding the kosher meal, and request[ing] the Major's intervention."  (Compl. at 5.)  In the kite to Major Connors, Plaintiff stated that he had been a Muslim since 1997 and that his religious affiliation was documented in Colorado Department of Corrections records and various county jail records, including the records of the DCJ.  According to Plaintiff, Major Connors never responded.

On March 19, 2010, Plaintiff submitted the first of several grievances related to not receiving a kosher meal.  In the grievance, Plaintiff again explained that he has been a Muslim since 1997 and again listed the Colorado Department of Corrections, the Adams County Jail and the Arapahoe County Jail for verification purposes.  On April 10, 2010, when he did not receive a response to his grievance within ten working days as he contends is required by DCJ policy, Plaintiff submitted kites to Chaplain Scott and Chief Diggins, complaining that his kosher meal requests had been ignored for two months and requesting resolution of the matter.  He states that he never received a response to either kite.

On April 15, 2010, Plaintiff received a response from Major Connors denying his March 19, 2010 grievance.  The denial stated,

> [I]t appears that the only time you attempt to or claim to practice that religion is when you are incarcerated.  You have not been incarcerated in the last couple of years, yet you cannot state which mosque you attend, nor can anyone verify that you are a practicing member of any mosque.  You gave us no information to work with so your request was denied.

(*Id.* at 7.)  Plaintiff contends that the denial was not based on any facts as Major Connors did not claim to know Plaintiff from outside the jail, or to have spoken with anyone who knows Plaintiff from outside the jail regarding Plaintiff's religious practices when he is not incarcerated. Plaintiff also contends that Major Connors' assertion that Plaintiff had not been incarcerated for the last couple of years was contrary to fact, because, in fact, Plaintiff had been incarcerated at the Adams County Detention Facility from November 7, 2008 to April 14, 2009.  Moreover, Plaintiff asserts that the DCJ inmate handbook provides that "[a]ll declarations must be verifiable through a source outside of the jail (clergy, rabbi, iman, etc.)."  (*Id.* at 8.)  According

to Plaintiff, "nowhere in the jails [sic] policies, does it specify, that the verifiable source has to

be related to a mosque you attend, or a source that can verify that you are a practising [sic]

member of a mosque . . . .  As a matter of fact, the jails [sic] policy is not specific on who the

source has to be or what's being verified."  (*Id.*)  Thus, Plaintiff maintains that another facility or

institution, such as the Colorado Department of Corrections, the Adams County Jail and the

Arapahoe County Jail, would be sufficient verifiable sources, outside of the jail.

On April 27, 2010, Plaintiff submitted a second grievance, addressed directly to Major

Connors, contesting his denial of a kosher meal and again providing verification information.

He claims he never received a response to this grievance.  On May 7, 2010, Plaintiff submitted a

third grievance to Chief Diggins requesting that he intervene.  On May 12, 2010, Plaintiff was

transferred from the DCJ to the Arapahoe County Jail.  On May 13, 2010, Plaintiff submitted a

change of address to Chief Diggins requesting that any correspondence relating to his grievance

regarding the kosher meal be sent to his new address.  Nevertheless, Plaintiff claims he never

received a response to his third grievance.

Plaintiff asserts that, when he was incarcerated in the Adams County Jail, from

November 7, 2008 to April 14, 2009, he received kosher meals.  He claims that when he

submitted a kite to the programs coordinator at the Adams County Jail, he listed the DCJ,

including Major Connors, as one of his verifiable sources.  He alleges that the response to his

kite at Adams County notes that "the plaintiff being Muslim was confirmed by Denver County

Programs Coordinator on 12-30-08."[1]  (*Id.* at 10.)  Plaintiff notes the irony that not only did the DCJ administration know that Plaintiff is Muslim, prior to his incarceration there in February 2010, it was documented in the jail records.

Plaintiff alleges that Defendants violated the RLUIPA and his First and Fourteenth Amendment rights.  He claims that Defendants' actions created a substantial burden on his religious exercise and he was discriminated against on the basis of his religion.  He argues that the Defendants had an evil motive or intent to deprive Plaintiff of his free exercise of religion and that Defendants' denial of a kosher meal was in reckless or callous disregard to his federally protected rights which caused him mental anguish and emotional distress.  Plaintiff requests $50,000 in punitive damages and $50,000 in compensatory damages.

Defendants move to dismiss on the grounds that the Prison Litigation Reform Act (PLRA) bars an inmate from bringing an action for mental or emotional damages absent a showing of physical injury, and that Plaintiff has failed to allege facts showing that Defendant Diggins personally participated in the alleged violation.  (Mot. Dismiss at 4-7.)  Plaintiff first moved to amend the complaint to clarify his physical injury and Chief Diggins' personal involvement as well as to clarify his RLUIPA claim, his Free Exercise claim, his Equal Protection claim and his request for relief.  (Doc. No. 39. at 1-2.)  He then moved to amend to

---

[1] In his complaint, Plaintiff claims that the confirmation by the Denver County programs coordinator is noted and highlighted on his request to the Adams County Jail, but the highlighting is black on the copy of the request filed with the court as Exhibit N to the complaint.

5

add that he is suing Defendants under RLUIPA in both their official and individual capacities, and to add a Due Process claim under the Fourteenth Amendment.  (Doc. No. 47 at 1.)

## PROCEDURAL HISTORY

Plaintiff filed his prisoner complaint on August 23, 2010.  Defendants filed their Motion to Dismiss on November 15, 2010, to which Plaintiff filed a Response on December 30, 2010 (Doc. No. 32 [Resp.]) and Defendants filed a Reply on January 11, 2011 (Doc. No. 38 [Reply]). Plaintiff filed his first Motion to Amend on January 14, 2011 (Doc. No. 39), to which Defendants filed a Response on February 1, 2011 (Doc. No. 42), and Plaintiff filed a Reply on February 25, 2011 (Doc. No. 48).  Plaintiff filed a second Motion to Amend on February 25, 2011 (Doc. No. 47), to which Defendants filed a response on March 18, 2011 (Doc. No. 51). The motions are ripe for review and recommendation.

## STANDARD OF REVIEW

### A.      Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

6

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**B.**      ***Failure to State a Claim Upon Which Relief Can be Granted***[2]

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

_____

[2] Defendants move, in the alternative, for summary judgment.  On a Rule 12(b)(6) motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 [and a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  "[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the [] court considers, materials outside the pleadings."  *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999).  However, without converting a motion to dismiss into one for summary judgment, the court may consider documents attached to the complaint as exhibits, Fed. R. Civ. P. 10(c); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).  Attached to Plaintiff's complaint are Exhibits A-Q, which Plaintiff also refers to in his complaint.  Defendants have not contested the authenticity of these documents.  Although Plaintiff attaches exhibits to his Response to Defendants' Motion to Dismiss, these are the same exhibits attached to his complaint.  Neither party has proffered materials outside the pleadings for the court's consideration.  As the court has not considered matters outside the pleadings, the court will analyze Defendants' Motion under the Rule12(b)(6) standard.

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies the allegations in the complaint that are not entitled to the assumption of truth, that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation

8

omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.* (citations omitted).

**C.     *Leave to Amend***

Pursuant to Fed. R. Civ. P. 15(a), "[t]he court should freely give leave (to amend

the pleadings) when justice so requires."  *See also York v. Cherry Creek Sch. Dist. No. 5,* 232

F.R.D. 648, 649 (D. Colo. 2005); *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley

Hosp. Dist.,* 353 F.3d 832, 842 (10th Cir. 2003).  The Supreme Court has explained the

circumstances under which denial of leave to amend is appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits.  In the absence of any apparent or declared reason-such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of amendment, etc.-the
> leave sought should, as the rules require, be "freely given."  Of course, the grant
> or denial of an opportunity to amend is within the discretion of the District Court,
> but outright refusal to grant the leave without any justifying reason appearing for
> the denial is not an exercise of discretion; it is merely abuse of that discretion and
> inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Triplett v. LeFlore County, Okl*., 712 F.2d

444, 446 (10th Cir. 1983).

## ANALYSIS

**A.    DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants move to dismiss on the grounds that Plaintiff has failed to allege a physical injury as required by the Prison Litigation Reform Act (PLRA) for claims for compensatory damages.  In the alternative Defendants seek dismissal of all claims against Chief Diggins for failure to allege facts that would show that Defendant Diggins personally participated in the alleged violations.

### 1.    *Claims for Emotional and Mental Distress Under the PLRA*

The PLRA provides, in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying § 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).  Although § 1997e(e) bars recovery of mental or emotional injury damages absent an allegation of physical injury, it does not bar recovery of punitive damages, declaratory relief, or nominal damages.  *Id.* at 881 (noting that punitive damages may be awarded for constitutional violations without a showing of compensable injury); *see also Perkins v. Kansas Dept. of Corrs.*, 165 F.3d 803, 808 (10th Cir. 1999) (holding that nominal damages are available for violations of certain absolute constitutional rights, such as due process, without any showing of actual injury).

10

The definition of the adjective "physical" is "of or relating to the body."  Merriam-Webster's Collegiate Dictionary 935 (11th ed. 2007).  The PLRA provides no statutory definition for the term "physical injury."  42 U.S.C. § 1997e *et seq*.  While the PLRA requires "physical injury," the threshold may not be particularly high.  *See Mitchell v. Horn*, 318 F.3d 523, 534-36 (3d Cir. 2003) ("We therefore follow the approach of the Fifth, Ninth, and Eleventh Circuits in requiring a less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury"); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) ("§ 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*."); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that the PLRA requirement should be construed consistent with the "well-established Eighth Amendment standard," and must be more than *de minimis*, but need not be significant).

Plaintiff's complaint fails to allege any physical manifestation—even a *de minimis* injury—relating to his body or harm caused to his body by Defendants' actions.  Since, Plaintiff has failed sufficiently to allege physical injury, his compensatory relief claims are barred.  Moreover, as discussed below, Plaintiff's proposed amendment to clarify his physical injury would be futile.   Accordingly, the court recommends that Plaintiff's claims for compensatory damages be dismissed.  However, Plaintiff's claim for punitive damages remains.

### 2.   *Personal Participation by Defendant Diggins*

Personal participation is an essential allegation in a § 1983 civil rights action.  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation

and each defendant's participation, control or direction, or failure to supervise.  *See Butler v.*

*City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  Morever, it is well established that a

defendant may not be held liable for constitutional violations merely because he or she holds a

supervisory position.  *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *Mitchell v.*

*Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  "Because vicarious liability is inapplicable

to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution."  *Iqbal*, 29 S. Ct. at 1948.

Defendants contend that Plaintiff's complaint contains no allegations that Chief Diggins

was personally involved in the alleged violations.  In response, Plaintiff argues that he submitted

numerous kites and grievances to Chief Diggins complaining that his subordinates where

subjecting Plaintiff to constitutional violations.  Plaintiff contends that Chief Diggins is not

being sued for his supervisory powers at the DCJ, "but for his involvement, knowledge, and his

failure to stop a subordinate's constitutional violation of which he was aware."  (Resp. at 10.)

In his Complaint, Plaintiff alleges that he submitted a kite to Chief Diggins on April 10,

2010, explaining that he had been requesting a kosher meal since February 2010 and had

submitted a grievance on March 19, 2010 to which he had not yet received a response.  He

further stated that he believed that Chaplain Scott was depriving him of his right to practice his

religion and asked Chief Diggins to resolve the issue.  (Compl. at 6.)  Plaintiff further alleges

that on May 7, 2010, he submitted a grievance to Chief Diggins chronicling his efforts to obtain

a kosher meal and noting that he had been denied a kosher meal for nearly ninety days,

12

effectively depriving him of his right to practice his religion and asking Chief Diggins to intervene.  (*Id.* at 9.)  Plaintiff also contends that, according to DCJ grievance procedures, the grievance he submitted to Major Connors on April 27, 2010 would have been forwarded to Chief Diggins because it was the second grievance.  (Resp. at 11.)  Plaintiff argues that these allegations show that Chief Diggins "had actual knowledge of the misconduct, approved of it, acquiesced in it or failed to stop it."  (Resp. at 12 (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992)).)

In this case, whether Plaintiff has alleged personal participation sufficient to withstand a motion to dismiss is a close question.  Plaintiff has alleged facts to suggest that Chief Diggins was aware of a potential constitutional violation, and that he failed to respond to Plaintiff's grievances or intervene on Plaintiff's behalf.  The question is whether knowledge of alleged misconduct, approval of it, acquiescence in it, or failure to stop it, amounts to the personal participation necessary to state a claim against a supervisor since the Supreme Court's decision in *Ashcroft v. Iqbal*.

The Tenth Circuit recently reviewed "the continuing vitality of supervisory liability under § 1983 after the Supreme Court's [] decision in *Ashcroft v. Iqbal*." *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010).  The court noted that, prior to *Iqbal*, this circuit had held that "§ 1983 [did] not allow a plaintiff to hold an individual government official liable under a theory of *respondeat superior*." *Id.* (citations omitted).  The circuit had previously explained that "this [did] not mean that a supervisor may not be liable for the injuries caused by . . . his subordinates.  It [did] mean that his liability [was] not vicarious, that is, without fault on his

13

part." *Id.* at 1195 (citations omitted). Thus, pre-*Iqbal* the circuit recognized that, while "*respondeat superior* imposes liability for public policy reasons upon masters though they are not at fault in any way, direct liability only imposes liability where the plaintiff has shown the supervisor himself breached a duty to plaintiff which was the proximate cuase of the injury." *Id.* (citations omitted). Accordingly, the Tenth Circuit previously required a plaintiff to establish that the subordinate violated the Constitution and an affirmative link between the supervisor and the violation. *Id.* (citation omitted). A supervisor's "personal direction or knowledge of and acquiescence in a constitutional violation often sufficed" to establish the affirmative link. *Id.* at 1196. (citation omitted).

In *Iqbal*, the Supreme Court held that the alleged deliberate indifference to or knowledge and acquiescence of Defendants Ashcroft and Mueller in their subordinates' unconstitutional conduct or discriminatory animus, alone, did not amount to the state of mind required to establish purposeful discrimination. *Iqbal*, 129 S. Ct. at 1948-49. The Court held that, "when a plaintiff sues an official under . . . § 1983 for conduct arising from his or her superintendent responsibilities, the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198 (citing *Iqbal*, 129 S. Ct. at 1949). In *Dodds*, the circuit noted that there is no consensus regarding the meaning of this aspect of *Iqbal*, and whether even deliberate indifference with actual knowledge of subordinates' unconstitutional conduct is no longer sufficient for supervisory liability. *Id.* Because the allegations in the circuit's cases since *Iqbal* had not satisfied the pre-*Iqbal* liability standard, the

14

court had not had the opportunity to determine what allegations of personal involvement and mental state do meet *Iqbal*'s stricter liability standard. *Id.* at 1198-99. In *Dodds*, the Tenth Circuit held that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the constitution." *Id.* at 1199. However, the court still has not determined whether allegations of a supervisor's knowledge of and acquiescence in a constitutional violation, such as those made by Plaintiff in this case, are sufficient to state a claim, post-*Iqbal*. Given the lack of clarity in the law, the court finds that Plaintiff has alleged sufficient facts to suggest personal participation on the part of Chief Diggins and therefore recommends that Defendants' motion to dismiss Plaintiff's claims against Chief Diggins be denied.

**B.    PLAINTIFF'S MOTIONS TO AMEND**

In his first Motion to Amend (Doc. No. 39), Plaintiff seeks to clarify "Chief Diggins' personal involvement, and/or to clarify that Chief Diggins was aware of the misconduct of his subordinates and failed to stop it, etc.," to clarify Plaintiff's physical injury, and to clarify his RLUIPA claim, his Free Exercise claim, his Equal Protection claim and his request for relief. (Doc. No. 39 at 1-2.) Plaintiff provides no further information regarding his proposed amendments but attaches his proposed amended complaint to the motion.

The proposed amended complaint demonstrates that Plaintiff wants to add several additional sentences to the effect that Chief Diggins was aware of the misconduct of his

subordinates but did not stop it.  (*See* Doc. No. 39-1 at ¶¶ 7, 8, 18, 20, 24.)  Plaintiff also seeks to

add that Defendants' actions "discouraged the plaintiff and broke his spirits."  (*Id.* at ¶ 19.)  He

became very depressed, could not eat, could not sleep, thought about committing suicide,

stopped praying and lost a lot of weight.  (*Id.* at 8, 14, 17.)  He claims the weight loss was not

related to any prior health issues and was related to the misconduct and depression it caused

Plaintiff.  (*Id.* at 8.)  With regard to his RLUIPA claim, Plaintiff purports to add a request for

declaratory and injunctive relief, to rewrite the body of the claim, albeit with few substantive

changes, and to allege that the DCJ receives federal financial assistance.  (*Id.* at 11.)  With the

proposed amendments to both his Free Exercise and his Equal Protection claim, Plaintiff clarifies

that he sues defendants in their individual and official capacities, adds a request for declaratory

and injunctive relief and adds substance to the body of these claims.  (*Id.* at 13, 16.)  With regard

to his Free Exercise claim, Plaintiff adds that Defendants' actions infringed on his sincerely held

religious beliefs, and that the denial of a kosher meal is unrelated to a legitimate penological

interest.  (*Id.* at 13.)  He also adds the allegations regarding his physical injury described above,

and additional allegations of personal participation on the part of Chief Diggins.  (*Id.* at 14-15.)

With regard to his Equal Protection claim, the Plaintiff adds that "[d]ue to his Islamic affiliation

& belief, the plaintiff was treated differently than those of other denominations or religions."

(*Id.* at 16.)  He also adds the allegations regarding physical injury previously mentioned.

Finally, Plaintiff seeks to incorporate the requests for declaratory judgment and injunctive relief

into his prayer for relief.  (*See id.* at 11, 13, 16, 19.)

In their response, Defendants argue that Plaintiff's proposed allegations regarding a physical injury do not cure the PLRA issues Defendants raised in their Motion to Dismiss because weight loss related to depression does not satisfy the physical injury requirement of § 1997e(e). (Doc. No. 42 at 2-3.)  Defendants also note that Plaintiff attempts for the first time to seek declaratory and injunctive relief.  (*Id.* at 3.)  Defendants argue that Plaintiff was transferred from the DCJ to the Arapahoe County Detention Facility on May 12, 2010 and his release from custody at the DCJ renders his requests for prospective injunctive relief moot.  (*Id.*)  Defendants do not address Plaintiff's proposed allegations of personal participation by Chief Diggins or his proposed amendments to his RLUIPA, Free Exercise or Equal Protection claims.

Plaintiff's only argument in reply is that Fed. R. Civ. P. 15(a) allows a party to amend its pleading once as a matter of course at any time before a responsive pleading is served and that Defendants have not served a responsive pleading.  (Doc. No. 48.)  It is true that Rule 15 allows a party to amend once as a matter of course

> (A) 21 days after serving [the pleading], or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Because Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) on November 15, 2010, more than twenty-one days before Plaintiff sought to amend his complaint, Plaintiff must obtain leave of court to amend his pleading.  As described above, in deciding whether to allow an

amendment, the court considers undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *See Foman*, 371 U.S. at 182.

The court has already found that the allegations of Plaintiff's operative complaint sufficiently describe personal participation on the part of Chief Diggins. In responding to Plaintiff's motion to amend, Defendants do not address Plaintiff's proposed amendments regarding personal participation. Given the courts' recommendation that Defendants' motion to dismiss for failure to allege personal participation be denied, the court finds no prejudice to Defendants in allowing Plaintiff to amend his complaint to include additional allegations of personal participation. Moreover, the court finds no evidence of undue delay, bad faith or dilatory motive or previous failure to cure deficiencies on the part of Plaintiff. Accordingly, the court recommends that Plaintiff's motion to amend be granted with regard to the proposed additional allegations of personal participation.

In contrast, the court finds that Plaintiff's proposed amendments to clarify his physical injury are futile. The proposed amendments regarding physical injury include allegations that Defendants' actions discouraged Plaintiff and "broke his spirits;" he could not eat, could not sleep, lost weight, became very depressed, thought about committing suicide and stopped praying. The PLRA requires a prisoner to cite a physical injury that is separate from mental and emotional injuries. This and numerous other courts have held that a prisoner cannot satisfy the physical injury requirement of the PLRA by alleging only physical manifestations of mental or

18

emotional injuries.  *See Hughes v. Colo. Dept. of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo.

2009) (finding physical manifestations of depression and anxiety insufficient to satisfy physical

injury requirement of § 1997e(e)); *see also Davis v. District of Columbia*, 158 F.3d 1342, 1349

(D.C. Cir. 1998) (affirming *sua sponte* dismissal with prejudice despite psychiatrist's affidavit

stating that prisoner suffered weight loss, appetite loss, and insomnia because § 1997e(e)

precludes reliance on somatic manifestations of emotional distress); *Murray v. Edwards Cnty.

Sheriff's Dept.*, 453 F. Supp. 2d 1280, 1292 (D. Kan. 2006) (noting that weight loss, alone, is

insufficient to demonstrate physical injury under the PLRA); *Minifield v. Butikofer*, 298 F. Supp.

2d 900, 905 (N.D. Cal. 2004) (stating that "[p]hysical symptoms that are not sufficiently distinct

from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical

injury"); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (holding that

depression and severe headaches caused by emotional distress not a "physical injury" under the

PLRA).  The court finds that Plaintiff's proposed amendments do not allege a physical injury

separate from his mental and emotional injuries and therefore are futile.  Accordingly, the court

recommends that Plaintiff's motion to amend be denied as to his allegations of physical injury.

 Plaintiff's attempt to amend his request for relief is also futile.  Plaintiff's amended

request for relief reads, in pertinent part:

> 1. A declaration that the acts and omissions described herein violated plaintiff's
> rights under the Constitution and Laws of the United States.
> 2. A preliminary and permanent injunction ordering the defendant Chief Diggins
> to change the policy that allows Chaplain Scott to be in charge of the kosher meal
> program and allot the kosher meal program to the DCJ programs coordinator, like
> the other "county jails" in the state; to end their custom of discriminating against

> Muslims; and to hire a Imam, to advise the DCJ administration and staff on Islamic practices.

(Doc. No. 39-1 at 19.)

There is no dispute that Plaintiff is no longer incarcerated at DCJ. (Compl. at 9.) "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot, i.e. where the controversy is no longer live and ongoing." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (citations omitted). It is well settled that "what makes a declaratory judgment action a proper judicial resolution of a 'case or controversy' rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* at 1299-1300 (quotations omitted). "[A] plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." *Id.* at 1300 (quotations omitted). When a prisoner has been released from custody, a declaratory judgment and injunctive relief "would amount to nothing more than a declaration that he was wronged, and would have no effect on defendants' behavior towards him." *Id.*. A prisoner's claims for declaratory and injunctive relief against prison officials become moot where the prisoner has been released from incarceration. *Id.*

On May 12, 2010, Plaintiff was released from the custody of the DCJ into the custody of the Arapahoe County Detention Facility, where he is currently incarcerated. (Compl. at 2, 9.) Since Plaintiff is no longer within the control of the DCJ, he cannot demonstrate further injury by the Defendants and, therefore, cannot maintain an action for declaratory or injunctive relief.

In his proposed amended compliant, Plaintiff asserts, "Although the plaintiff is no longer incarcerated in the DCJ, he believes the harm is very likely to happen again soon, upon ever returning to the jail." (Doc. No. 39-1 at 12, 14.) The possibility that Plaintiff will be transferred back to DCJ, or released from custody and then re-incarcerated at DCJ, is too remote to establish an existing controversy. *See McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984). Accordingly, the court finds Plaintiff's proposed amendments seeking declaratory and injunctive relief futile and recommends that Plaintiff's motion to amend be denied as to these amendments.

Defendants did not make any argument in response to Plaintiff's motion to amend regarding his RLUIPA claim. The court's reading of the proposed amended complaint demonstrates that Plaintiff seeks to sue Defendants for declaratory and injunctive relief for violations of Sections 1 and 3 of RLUIPA. Plaintiff also adds that the "DSD/DCJ receives federal financial assistance" and discusses the specific provisions of RLUIPA under 42 U.S.C. §§ 2000cc(a)(2) and (b)(2). (Doc. No. 39-1 at 11-12.) As just described, Plaintiff's attempt to pursue claims for declaratory and injunctive relief is futile.

Denying Plaintiff leave to amend his complaint to pursue declaratory and injunctive relief leaves Plaintiff with the request for punitive damages contained in his operative complaint. This court has already noted that, even absent a physical injury, the PLRA does not bar claims for punitive damages. However, it is unclear whether monetary damages are available under RLUIPA. Although this court has suggested that RLUIPA may not contemplate a claim for damages, *Boles v. Neet*, 402 F. Supp. 2d 1237, 1240-41 (D. Colo. 2005), the Supreme Court

recently granted cert to consider this question, *Sossamon v. Texas*, \_\_\_U.S.\_\_\_, 130 S.Ct. 3319

(2010).  Defendants have not made any argument regarding Plaintiff's request for punitive

damages.  The court considers that Plaintiff's claim for punitive damages under RLUIPA is still

viable.  *See Hall v. Ekpe*, No. 09-4492-pr, 2010 WL 3996211, at *3 (2d Cir. Oct. 13, 2010)

(reserving decision regarding request for money damages under RLUIPA pending the Supreme

Court's resolution of the issue in *Sossamon*).  With regard to Plaintiff's request to amend the

substance of his RLUIPA claim, the court finds no evidence of undue delay, bad faith or dilatory

motive or previous failure to cure deficiencies on the part of Plaintiff, or prejudice to

Defendants.  Because the punitive damages claim remains, the court recommends that Plaintiff

be allowed to amend his RLUIPA claim as proposed, except insofar as Plaintiff seeks declaratory

or injunctive relief.

Defendants also did not make any argument in response to Plaintiff's request to amend

his Free Exercise and Equal Protection claims.  Plaintiff seeks to sue Defendants in their

individual and official capacities for declaratory and injunctive relief and compensatory and

punitive damages in these claims.  He has also rewritten the substance of these claims, adding

several new factual allegations.  Again, Plaintiff's attempt to pursue claims for declaratory and

injunctive relief is futile and his claim for compensatory damages is barred by the PLRA.  In

addition, Plaintiff's proposed claims against Defendants in their official capacities are barred by

the Eleventh Amendment.[3]  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007) (noting

---

[3] Although Defendants have not made this argument, the court may raise the issue of Eleventh
Amendment immunity *sua sponte.  U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008).

that the Eleventh Amendment shields state officials, acting in their official capacities, from claims for monetary relief).

Denying Plaintiff leave to amend his complaint to pursue declaratory and injunctive relief and compensatory damages leaves Plaintiff with the request for punitive damages contained in his operative complaint. This court has already noted that, even absent a physical injury, the PLRA does not bar claims for punitive damages. In the absence of argument by Defendants, the court finds no evidence of undue delay, bad faith or dilatory motive or previous failure to cure deficiencies on the part of Plaintiff, or prejudice to Defendants. Because the punitive damages claim remains, the court recommends that Plaintiff should be allowed to amend his Free Exercise and Equal Protection claims as proposed, except insofar as Plaintiff seeks to sue Defendants in their official capacities and insofar as Plaintiff seeks declaratory or injunctive relief or compensatory damages.

In his second Motion to Amend (Doc. No. 47), Plaintiff seeks "to add to claim one, the RLUIPA claim, that he's suing [Defendants], in both their official and individual capacities." (Doc. No. 47 at 1.) He also seeks to add a Fourteenth Amendment Due Process claim and "to add & to reflect, all the additional amendments, outlined in his previous motion to amend the complaint." (*Id.* at 1-2.) Defendants object to the amendments proposed in Plaintiff's second Motion to Amend because they "will not cure the deficiencies noted in the original complaint . . . and will be futile." (Doc. 51 at 2.) Defendants rely entirely on their argument that Plaintiff's claims for compensatory damages are barred by the PLRA. However, as already discussed, the

PLRA does not bar claims for punitive damages.  Because Plaintiff seeks punitive damages in both his operative complaint and his proposed amendments, Defendants' arguments fail to address all of Plaintiff's claims.  Moreover, Defendants' response to Plaintiff's second Motion to Amend fails to address Plaintiff's desire to amend his RLUIPA claim to sue Defendants in their individual capacities and to add a Due Process claim.

As with claims for money damages under RLUIPA, it is unclear whether RLUIPA authorizes suits against individuals.[4]  Again, although this court has suggested that RLUIPA may not authorize individual capacity suits, *see Boles v. Neet*, 402 F. Supp. 2d 1237, 1240-41 (D. Colo. 2005), the Supreme Court's resolution of *Sossamon v. Texas* may also implicate a plaintiff's ability to sue defendants in their individual capacity for money damages, *see Hall*, 2010 WL 3996211, at *3 (reserving decision regarding individual capacity claims for money damages under RLUIPA pending the Supreme Court's resolution of *Sossamon*).  Accordingly, the court does not find this amendment futile.  Again, without argument from Defendants, the court finds no evidence of undue delay, bad faith or dilatory motive or previous failure to cure deficiencies on the part of Plaintiff, or of prejudice to Defendants.  The court recommends that Plaintiff be allowed to amend his RLUIPA claim to assert that claim against Defendants in their individual as well as official capacities.

---

[4] Plaintiff originally sued Defendants under RLUIPA in their official capacities.  (*See* Compl. at 11.)  It is not clear whether Eleventh Amendment immunity applies to official capacity RLUIPA claims. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (noting that it is an unsettled question but declining to decide the issue).

Finally, Plaintiff seeks to assert a Due Process claim against Defendants in their individual and official capacities for declaratory judgment, injunctive relief, compensatory damages and punitive damages.  Plaintiff purports to allege that the actions of Defendants amount to punishment in violation of Plaintiff's due process rights as a pre-trial detainee at the DCJ.  For all the reasons discussed above, Plaintiff's proposed request for declaratory and injunctive relief and compensatory damages and his attempt to sue Defendants in their official capacity are futile.  However, again, the PLRA does not bar Plaintiff's claim for punitive damages.  Defendants have made no argument regarding Plaintiff's proposed Due Process claim. The court finds no evidence of undue delay, bad faith or dilatory motive or previous failure to cure deficiencies on the part of Plaintiff, or of prejudice to Defendants and recommends that Plaintiff's motion to amend to add a Due Process claim be granted, except insofar as Plaintiff seeks to sue Defendants in their official capacities and insofar as Plaintiff seeks declaratory or injunctive relief or compensatory damages.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that

1.    "Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (Doc. No. 23) be GRANTED IN PART and DENIED IN PART.  The court recommends that it be GRANTED with regard to Plaintiff's claims for compensatory damages and DENIED in all other respects;

2.      "Plaintiff's Motion to Amend the Complaint" (Doc. No. 39) be GRANTED IN PART and DENIED IN PART.  The court recommends that it be DENIED insofar as Plaintiff seeks to bring official-capacity claims against Defendants for Free Exercise and Equal Protection violations and with respect to his request for injunctive and declaratory relief and GRANTED in all other respects;

3.      "Plaintiff's Motion to Amend the Complaint" (Doc. No. 47) be GRANTED IN PART and DENIED IN PART.  The court recommends that it be GRANTED to allow Plaintiff to add a claim under RLUIPA against Defendants in their individual capacities and to add a Due Process claim seeking punitive damages, but DENIED insofar as Plaintiff seeks to sue Defendants in their official capacities for the alleged Due Process violation and with respect to his request for injunctive and declaratory relief and compensatory damages for the alleged Due Process violation; and

4.      The Clerk be directed to file Plaintiff's second proposed amended complaint (Doc. No. 47-1) with instructions that this complaint is accepted as filed with the following exceptions:

a)      Plaintiff's claims for declaratory and injunctive relief are not accepted;

b)      Plaintiff's official-capacities claims against Defendants for Free Exercise, Equal Protection and Due Process violations are not accepted; and

c)      Plaintiff's request for compensatory damages for his Due Process claim is

not accepted.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

27

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 23rd day of March, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge